on behalf of the petitioner appellant, Ronnie Lynch. Your Honor, we're here today because of certification of the following issue. Whether the trial court's denial of Lynch's motion for new counsel based on an irreconcilable conflict violated the Sixth Amendment right to counsel, citing this in-bank case in Shell v. Wittek, the first question should be what exactly did the trial court do? And I submit there is confusion on that of what he actually did do. The order which Judge Campbell signed, obviously he dismissed the case. He didn't go on to the merits. He says the objection to the magistrate's findings repeats the arguments in his petition, and the objections quite clearly state counsel never explained the state proffered plea agreement. He filed a motion to withdraw two weeks prior. He was inexperienced and so forth. And then he goes on to say these grounds were not raised in the petition or in any of the briefing. I think what the trial judge is saying is that it was not the general issue was raised in the petition, not the specific issue. And that's a denial or dismissal based on procedural grounds. So where this court should begin is by looking at the petition on the procedural grounds to see if the ground was in the petition. We submit it was, Section M, Ground 4, page 8 of the petition, page 8 of my district court excerpt. And by the way, I thought the clearest way to do this administratively was to submit two separate excerpts, one for proceedings in the state court, one for proceedings in the district court. I could have called them Volume 1 and 2. I did not. I would ask the court to accept both of those excerpts the way I've done it because I think that's clearer. The state has no objection. That's small stuff. In any event, the guy alleges, and this is far from clear. The more he says, the less he gets through in communication. His communication skills are not the best, neither is his handwriting. But it does say that there was he submitted a letter. He claimed that he filed a letter to the court wherein he informed the court that his regarding a plea offer, defense counsel stated to the defendant, you're a worthless piece of S. If you do not take the plea or a plea that Mr. Freeman is offering, I will make sure you get life in prison and other continuing conflicts. He also attached to that approximately 150 or so pages of proceedings in the state court. Those are allegations also which the court must consider. The civil rule is whatever is attached as an exhibit to a pro se petition is part of the petition itself. And on page 2, and this is referring to his supplemental memo in the state court before Judge O'Toole. It is page 11 of my district court excerpt, which of course refers to a state court proceeding. So it is somewhat confusing. Due to the deteriorated attorney-client relationship, the plea bargain offered by the state on 7999 was never explained to the defendant about the plea offered by the state and its benefits as opposed to going to trial. We submit that that does show that the petitioner in this case did state his issue, that he was denied Sixth Amendment rights because he has a Sixth Amendment right to have a plea agreement, plea offer on the table submitted to him and explained by his attorney. That is what the Sixth Amendment requires. In this case, the plea proceedings were the very heart of the case. He had no hope of winning this trial. We could try this case ten times and we'll lose every time they'll win. His only hope of not spending the rest of his life in prison was to speak to his lawyer, have advice, have the lawyer spell out to him, look, Ronnie, old boy, you've got nothing going for you. You're going to lose this case. You either accept this. It's very good news for you because it's only half your life in prison instead of your whole life. And that's the facts. This was the critical tipping point of the whole case. And we submit that the allegation is there that the trial judge never did reach the merits because he felt that it should be dismissed on procedural grounds. So we submit that this matter should be reversed, sent back for evidentiary hearing based upon the allegations that he was denied Sixth Amendment right. He never did have a hearing based upon his allegation that the plea offer was never explained to him by his attorney due to this ongoing conflict. And I'll certainly admit and agree with the State that he looks like a very difficult customer. I submit to you the Supreme Court case Ron Pillar v. Beard. That alone does not disqualify him or deny him Sixth Amendment right to counsel at an especially critical time in the case. And I would like to hear what the defense or the other side has to say, and I'll take the other half of my time then. Okay. So what claims were in the petition? May I please? Decided by the district court. I'd like to announce myself. Good morning, Your Honor. Assistant Attorney General Robert Walsh appearing on behalf of the respondents in this case. You asked Judge Paez which claim was raised in the habeas petition. Is that what I understand? Basically, it was the same claim that he raised to the Arizona Court of Appeals on direct appeal, which was whether or not Judge O'Toole erred in denying his motion for substitution of counsel. And what I think is really important when you look at this particular ground, which is page 8 of the habeas petition, is that he indicates that this was something raised in direct appeal, not on post-conviction relief. And I think what's very important is, I mean, the whole tenor of his argument on appeal was that he was basically forced to choose between going pro per, where he actually did request that and was denied that, and going to trial with an attorney with whom he claims he had an irreconcilable conflict. The very last sentence of what he wrote says, effectively the court erred and caused constitutionally, I agree with counsel, he's hard to read, impermissible harm to the defendant by denials for counsel which, here's the important words, resulted in a tainted trial, sentencing, and process. So he made that particular claim in state court, but he never said, because of this conflict, I didn't take a plea offer that I otherwise would have accepted. And I think it was very difficult for him to make that argument, given the fact that the court and the prosecutor and his attorney on July 9th went through that plea agreement, told him what the sentencing range was, and he was certainly aware of it. Now, I've made procedural arguments to this Court in my brief. I said he hasn't properly exhausted this claim in state court and that he needs to make that particular claim in state court. Now, he did, in fact, in his Rule 32, allege that his attorney was ineffective for failing to explain the plea offer. That basically means he didn't tell me what the relative benefit of taking the plea was, what the sentencing range would be pursuant to the plea, versus what would happen to him if he lost the trial and what that sentencing range would be. And when you take a look at Judge O'Toole's minute entry, where he disposes of that particular claim, that's precisely how he frames it. In fact, he even notes that in his reply to the State's response to his Rule 32 petition that he acknowledged that he had been advised of the sentencing ranges pursuant to the plea and trial, but he claims that he should have had that discussion with his attorney basically off the record. Nowhere in the state court pleadings do you see him making the argument, by the way, he never told me how strong the case was. And again, I submit to the Court that the reason why he didn't make that allegation was because he knew very well how strong the case of the State was against him. I gave a chronological order in my answering brief regarding this. I talked about the very first time when this was brought to his attention, it was during the hearing on his release conditions, when the judge commented, and this is before the DNA evidence came through, that the State had a very strong case against him. We know that there was, in fact, evidence taken from him, blood, urine. Those types of things were taken from him. He was in court when the DNA evidence was admitted, or at least litigated. He knew it was coming in. In fact, even in his motion to have Wheelahan taken off his case, he acknowledges that, you know, hey, he never filed motions to suppress. He didn't get the pretrial identification suppressed. And on July 9th, during his argument to the Court, he explains that he's afraid for his life. He knows the case against him is very strong. He even says initially to Judge O'Toole, Wheelahan told me that if I didn't take the plea, there was nothing he could do for me. So he knew that the case was strong. And I argued at the end, even if this was properly brought before this Court, that he would still lose. So his whole constitutional challenge here is to the denial of his motion to substitute counsel. That's the way I understood it, and that's the way I prepared the brief that I responded to. So what's the clearly established law that we look to to decide him? The claim that he's raising now or the one that he raised below? The claim that he's – that I think is in the petition. The one you just – he – the way I understood the petition that's properly before us was that he was challenging – he's claiming that the denial of his motion to substitute counsel violated his due process rights. Right. Morris resulted in an effective assistance. The result of that denial was it resulted in an effective assistance of counsel. And he points to failure to explain the plea agreement and other matters. But the heart of his claim is the denial of his request for substitution of counsel. The only case that I know of that comes close from the Supreme Court is Morris v. Slappy. Now, there are two cases that this Court decided, Plumlee v. Masto, and I believe the other one was Larson v. Palmatier. And in those cases, the Court said that you were unaware of any Supreme Court precedent that basically states that there's a Sixth Amendment violation when the defendant is represented by an attorney who is free of actual conflict but with whom he refuses to cooperate because of dislike or distrust. That's this case. We have a defendant who was not cooperating with his attorney. There was no good cause for him to do so. He was trying to see the record with error. And did the trial court judge make that finding? In terms of him being a streperous defendant? He did not cooperate. Well, he basically said to the defendant during that July 9th hearing that he didn't believe him and that he felt that he was selectively feigning ignorance when it suited him. And it's basically throughout the proceedings. But really, Judge, the important and dispositive ruling that this Court has to look at is actually the Arizona Court of Appeals Memorandum decision because that is the last recent State court decision, and that court looked at the entire record as a whole. And so what the defendant said not only during that July 9th proceeding, but also if you take a look at what happened during the first day of trial, and you see how he was being very difficult there where he was claiming he thought during the Feretta colloquy that he was on trial for assaulting a police officer and he claimed he didn't know the victim and he didn't know anything about these crimes. Yet three days later he testifies in detail to that. What the Sixth Amendment required in this case was basically the defendant receiving adequate counsel. And he received that. I don't think that my opponent even contends that Wheelerhan did anything but conduct a very superlative defense with very adverse circumstances and evidence. That's the reason why he's changed the focus to something that not only was not presented to the State court but also not to the district court as well. I did provide the court with supplemental authority that the defendant cannot raise new arguments and objections to the magistrate, and I provided that. But if you look even at the objections themselves, he again does not raise the issue that's being argued. He's saying he didn't explain the plea offer to me. He didn't say he didn't tell me the evidence against me was so overwhelming that I should take the plea. Now, his argument is essentially he didn't tell me these are the terms of the plea agreement. In State court he said I wanted that discussion off the record, not in front of the judge and the prosecutor. Now, I know that the court granted this particular order for a certificate of appealability to deal with Schell v. Wittig. And it seems to me the focus of this argument is different than what I actually thought it would be, which is about the trial itself. For that reason, I ask the Court, is there any sort of concerns or questions that you have for me that deals with that aspect of it, or do you have any other questions on me regarding the arguments that Petitioner is making now? Okay. Well, thank you very much. I have nothing else to say. Your Honor, the trial of this case was a foregone conclusion. This case was over before it began. The only hope this guy ever had of not spending the rest of his life in prison was this plea proceeding. And that's what we're talking about. I don't see any prejudice. Even if I could find error in the trial, which I didn't even try, I don't think it would have made a bit of difference. The guy was locked up. I mean, he's not going to win his trial. The problem is that he made this allegation that he told the judge in open court, he told Judge Toole in the July hearing, my lawyer never explained anything to me. I don't understand the plea agreement. And as I read what happens during the course of all these pretrial things where he's trying to get himself a new lawyer, the lawyer's trying to get out. I mean, this is not a pleasant situation for the lawyer either. Very unhappy. But the trial judge says, you know, I just think you're creating all these problems for yourself. You're trying to be obstreperous. I have no – this doesn't seem to be coming from your lawyer. I have no confidence that you'll behave any differently with the next lawyer, and I deny. And the argument then is that there was a constitutional right under these circumstances for him to have new counsel. I mean, that's the argument in front of us, right? At least it's had the plea agreement explained to him. Whether it's the same counsel or somebody else, that's the judge's discretion. But he had the right to have this plea agreement explained to him. But is that the question in front of us as to whether or not it was a voluntary plea agreement? No. Whether he was put in a position by his attorney that he knew the evidence against him, that he knew what he had to look forward to, and he could make an informed decision. My best case is Nunes v. Mueller in 2003, which applies strictly to these plea-type proceedings, the right to counsel's assistance in making an informed decision once a plea had been put on the table, citing Hill v. Lockhart as established Supreme Court precedent. That is what he had the right to, too, is the right to counsel's assistance. As I said, this was the critical point in these criminal proceedings. And the judge did not hold a full and fair hearing. Number one, he based his credibility determination in part on a report of this Dr. Jack Potts, which as far as this record shows was never even shown to the defendant. Remember, there are two hearings here. One in June, the defendant was not allowed to be present when Dr. Potts' report was received and accepted, finding that he was malingering as opposed to being seriously mentally deficient. And, of course, we all can see that he has issues of various sorts. But he was held to be competent. But the finding was malingering. He apparently never even saw that report. And that had to be in part the basis of Judge Toole's credibility decision at the hearing in July at which the defendant was present. And that's not a fair proceeding. He should have had the opportunity to cross-examine Potts and explain what had happened. And even if he is difficult, you know, we have many criminals who are difficult. I mean, it's not a happy business. There's got to be a better way to make a living for us here. But even so, we have to do the best we can under the circumstances. And I cite Rompilla v. Beard. That guy just walked away from his lawyer even through obstacles in the lawyer's path. He still had a right to the Sixth Amendment, resistance of counsel as best he could. And bear in mind that when Judge Toole made these findings, it was not a hearing on that issue at all. It was a motion for continuance by the public defender on the grounds that he was asking for another month to give us an opportunity to consult about the case. He doesn't know what I'm doing, where I'm coming from on this case, and I don't know where he's coming from. That's probably an accurate statement of the attorney-client relationship. That's the public defender. And this was even more than just the PD. This was the fellow supervisor. So it was actually a double whammy. The supervisor was there asking, come on, Judge, we want out, the defendant wants out. And the judge didn't conduct a full and fair hearing. We submit there should be a full and fair hearing now. Okay. Thank you very much. The case of Lynch v. Shriver now submitted for decision. I thank both counsel for your arguments.
judges: Hall, Fletcher W. , Paez